NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SAMUEL W. LEWIS, | ) | No. C 08-03934 JF (PR) |
| Petitioner, | ) | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR CERTIFICATE OF APPEALABILITY |
| vs. | ) | |
| BEN CURRY, Warden, | ) | |
| Respondent. | ) | |

Petitioner, a state prisoner proceeding pro se, seeks a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the decision of the Board of Parole Hearings (the "Board") finding him unsuitable for parole. The Court found that the petition stated cognizable claims and ordered Respondent to show cause why the petition should not be granted. Respondent filed an answer addressing the merits of the petition, and Petitioner filed a traverse. Having reviewed the papers and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claims presented and will deny the petition.

**STATEMENT**

On November 21, 1988, Petitioner was sentenced to a term of fifteen-years-to-life

in state prison after pleading no contest to second degree murder in Los Angeles County Superior Court. Petitioner challenges the Board's decision denying him parole following his most recent parole suitability hearing on October 1, 2007. (Pet., Ex. 1, p. 113-125.) Petitioner filed habeas petitions in the state superior court, state appellate court, and the state supreme court, all of which were denied as of July 23, 2008. Petitioner filed the instant federal petition on August 18, 2008.

## DISCUSSION

### A. Standard of Review

This Court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-413 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must

also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409. In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The standard for "objectively unreasonable" is not "clear error" because "[t]hese two standards . . . are not the same. The gloss of error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "results in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Where, as here, the highest state court to consider Petitioner's claims issued a summary opinion which does not explain the rationale of its decision, federal review under § 2254(d) is of the last state court opinion to reach the merits. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this case, the last state court opinion to address the merits of Petitioner's claims is the opinion of the California Superior Court for the County of Los Angeles. (Petition, Ex. 15.)

**B.    Petitioner's Claims**

Petitioner alleges that the Board's decision to deny him parole was not based on at least some evidence and thus violated his right to due process. The Ninth Circuit has determined that a California prisoner with a sentence of a term of years to life with the possibility of parole has a protected liberty interest in release on parole and therefore a

1  right to due process in the parole suitability proceedings.  See McQuillion v. Duncan, 306
2  F.3d 895, 902 (9th Cir. 2002) (citing Board of Pardons v. Allen, 482 U.S. 369 (1987);
3  Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1 (1979)).  See also
4  Irons v. Carey, 505 F.3d 846, 851 (9th Cir. 2007); Sass v. California Board of Prison
5  Terms, 461 F.3d 1123, 1127-28 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910, 915-16
6  (9th Cir. 2003).

7       A parole board's decision must be supported by "some evidence" to satisfy the
8  requirements of due process.  Sass, 461 F.3d at 1128-29 (adopting "some evidence"
9  standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-
10 55 (1985)).  The standard of "some evidence" is met if there was some evidence from
11 which the conclusion of the administrative tribunal may be deduced.  See Hill, 472 U.S.
12 at 455.  An examination of the entire record is not required, nor is an independent
13 assessment of the credibility of witnesses nor weighing of the evidence.  Id.  The relevant
14 question is whether there is any evidence in the record that could support the conclusion
15 reached by the Board.  See id.  Accordingly, "if the Board's determination of parole
16 suitability is to satisfy due process there must be some evidence, with some indicia of
17 reliability, to support the decision."  Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir.
18 2005) (citing McQuillion, 306 F.3d at 904).

19      When assessing whether a state parole board's suitability determination was
20 supported by "some evidence," the court's analysis is framed by the statutes and
21 regulations governing parole suitability determinations in the relevant state.  Irons, 505
22 F.3d at 850.  Accordingly, in California, the court must look to California law to
23 determine the findings that are necessary to deem a prisoner unsuitable for parole, and
24 then must review the record in order to determine whether the state court decision
25 constituted an unreasonable application of the "some evidence" principle.  Id.

26      California Code of Regulations, title 15, section 2402(a) provides that "[t]he panel
27 shall first determine whether the life prisoner is suitable for release on parole.  Regardless
28 of the length of time served, a life prisoner shall be found unsuitable for and denied

1  parole if in the judgment of the panel the prisoner will pose an unreasonable risk of
2  danger to society if released from prison." Cal. Code of Regs., tit. 15, § 2402(a). The
3  regulations direct the Board to consider "all relevant, reliable information available."
4  Cal. Code of Regs., tit. 15, § 2402(b). Further, the regulations enumerate various
5  circumstances tending to indicate whether or not an inmate is suitable for parole. Cal.
6  Code of Regs., tit. 15, § 2402(c)-(d).[1]

It is now established under California law that the task of the Board and the Governor is to determine whether the prisoner would be a danger to society if he or she were paroled. See In re Lawrence, 44 Cal. 4th 1181 (2008). The constitutional "some evidence" requirement therefore is that there be some evidence that the prisoner would be such a danger, not that there be some evidence of one or more of the factors that the regulations list as factors to be considered in deciding whether to grant parole. Id. at 1205-06.

Most recently, the Ninth Circuit reheard en banc the panel decision in Hayward v. Marshall, 512 F.3d 536 (9th Cir. 2008), reh'g en banc granted, 527 F.3d 797 (9th. Cir. 2008), which presented a state prisoner's due process habeas challenge to the denial of parole. The panel opinion concluded that the gravity of the commitment offense had no predictive value regarding the petitioner's suitability for parole and held that the governor's reversal of parole was not supported by some evidence and resulted in a due process violation. 512 F.3d at 546-47. The Ninth Circuit has not yet issued an en banc

---

[1] The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. Cal. Code of Regs., tit. 15, § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Cal. Code of Regs., tit., 15 § 2402(d).

decision in Hayward.

Unless or until the en banc court overrules the holdings in Biggs, Sass, and Irons, it remains the law in this circuit that California's parole scheme creates a federally protected liberty interest in parole and therefore a right to due process, which is satisfied if some evidence supports the Board's parole suitability decision. Sass, 461 F.3d at 1128-29. These cases also hold that the Board may rely on immutable events, such as the nature of the conviction offense and pre-conviction criminality, to find that the prisoner is not currently suitable for parole. Id. at 1129. Biggs and Irons also suggest, however, that over time, the commitment offense and pre-conviction behavior become less reliable predictors of danger to society such that repeated denial of parole based solely on immutable events, regardless of the extent of rehabilitation during incarceration, could violate due process at some point after the prisoner serves the minimum term on his sentence.[2] See Irons, 505 F.3d at 853-54.

The Board's decision denying parole in this case was based upon its review of the nature of the commitment offense, Petitioner's prior criminal history, and Petitioner's disciplinary reports during imprisonment. (Pet., Ex. 1, p. 113-117, 121.) The Board observed that the commitment offense was carried out in "an exceptionally callous disregard for human suffering and human life and the way that this crime way that this crime was carried out and the manner that this was done." (Id. at 114-115.) The Board added that the motive for the crime was "inexplicable." (Id. at 115.) The state superior court summarized the facts of the crime in its order denying petitioner's state habeas petition:

> The record reflects that on February 15, 1988, the Petitioner argued with Marcos Villegas and challenged him to a fight. Mr. Villegas' brother intervened and the Petitioner threatened to return with

---

[2] Although Petitioner asserts that his minimum parole eligibility date was February 19, 1997, superior court records indicate a date of February 19, 1998. This Court expresses no opinion on the accuracy of either date except to note that Petitioner's minimum parole eligibility date had passed prior to the date of this challenged 2007 parole eligibility hearing.

> his "homeboys". The Petitioner then told some gang members who he associated with about the incident and asked them to assist him. They gave him a sawed-off shotgun and told him that if he shot Mr. Villegas, it would be considered his initiation into the gang. The Petitioner returned to the area where he previously argued with Mr. Villegas and saw him standing among a group of five or six people. The Petitioner fired several shots toward the group, missing Mr. Villegas. However, Shavonne Perry was shot in the back and killed. Additionally, Lavelle Bullard and April Purcell each suffered non-fatal gunshot wounds.

(Pet., Ex. 15, p. 1.)

The Board first considered Petitioner's criminal history. The Board relied on Petitioner's commitment offense and described it as a "cruel, cold-blooded killing that . . . had multiple victims involved." (Pet., Ex. 1, p. 113.) The Board stated further that the crime was done in a "calculated manner" because Petitioner had returned three times to the victims' location, giving him time to back away had he chosen to do so, and that the motive for the crime was trivial because the crime was committed in the hopes of being accepted into a gang. (Id. at 114-115.) The Board observed that Petitioner had an escalating pattern of criminal conduct, beginning with a juvenile arrest for carrying a concealed weapon, and then an adult arrest for carrying a concealed weapon, which was later dismissed, followed by the instant offense. (Id. at 116.)

The Board then recited the Petitioner's record of misconduct while incarcerated. Petitioner had received seven 128a counseling chronos, the last one in February 1994 for being out of bounds, and seven 115 disciplinary reports, the last one in August 1999 for refusing a direct order. (Id.) The Board mentioned that Petitioner's most recent psychological report was "somewhat" supportive and that Petitioner had submitted documented evidence of parole plans. (Id. at 116-117.)

The Board commended Petitioner for his many achievements: obtaining his GED, two AA degrees, and almost completing a Bachelor's degree; openly discussing his role as a facilitator in the Alternatives to Violence program and his passion for it; and staying involved in Narcotics Anonymous and Alcoholics Anonymous since 1991 for his own self-improvement even though he has no history of substance abuse. (Id. at 119-120.) The Board praised Petitioner for being "really an excellent prisoner, a superb prisoner."

(Id. at 120.)  The Board concluded by telling Petitioner that he must "get some more distance with those disciplinaries," even though Petitioner's last disciplinary report occurred in 1999.  (Id. at 121.)

The state superior court made the following observations:

> The Court finds that there is some evidence to support the Board's findings that the Petitioner's commitment offense killed or injured multiple victims; that it was carried out in a dispassionate and calculated manner; and that his motive was very trivial in relation to the offense. [Citation omitted.] The Petitioner shot at Mr. Villegas, who was among a crowd of people.  Although he did not hit his intended target, he did kill one victim and seriously injured two others.  The Petitioner sought the help of gang members who he associated with, agreed to shoot Mr. Villegas as an initiation rite, armed himself with a sawed-off shotgun and returned to the area where he had argued with Mr. Villegas for the purpose of shooting him.  These actions were deliberate, planned and calculated and the Petitioner randomly fired into a crowd of unarmed people who posed no threat to him in an execution-style manner.  His motive for shooting at the crowd was that he wanted to be initiated into the gang that his friends were in.  This was a very trivial motive for killing one person and causing serious bodily injury to two others.
> The Board also considered the Petitioner's non-violent prior offenses; his gang association and its relationship to his offense; as well as the seven 115 disciplines that he received prior to 1999, two of which were for violent conduct.  While these factors, alone, may not justify a finding of unsuitability, the Board may properly consider them as relevant to a determination of whether the Petitioner is suitable for parole and they do weigh against his suitability. [Citation omitted.]

(Pet., Ex. 15, p. 1-2.)

Petitioner claims that the Board violated his due process rights in relying on his unchanging commitment offense and prior 115 disciplinary reports, even in the face of his extensive record of rehabilitation.  Although Respondent points out that there is no Supreme Court precedent prohibiting a parole board from relying on the unchanging facts of a prisoner's crime, the Ninth Circuit has cautioned that where the prisoner has served the minimum sentence and demonstrated "substantial evidence" of rehabilitation, reliance on unchanging facts could violate due process.  Irons, 505 F.3d at 853-54.

There are a number of factors to be considered in assessing whether the Board's decision was supported by "some evidence" that petitioner would present an unreasonable danger to the public if released.  For almost a decade prior to Petitioner's 2007 parole

suitability hearing, Petitioner's conduct while incarcerated was impeccable. Petitioner made great strides in his attempts to improve himself while incarcerated, as shown by his many accomplishments and the Board's laudatory comments. On the other hand, the gravity of Petitioner's underlying offense can be considered in requiring a period of longer incarceration. See Cal. Penal Code § 3041(b). Here, as the Board noted, the commitment offense was carried out in an especially cruel manner: there were multiple victims; Petitioner's actions were dispassionate and calculated; and Petitioner's motive was very trivial in relation to the offense. See Cal. Code of Regs., tit. 15, § 2402(c)(1).

Even though Petitioner had been incarcerated beyond his minimum term, there was some evidence before the Board indicating that Petitioner would continue to pose an unreasonable risk of danger to society if released. While the Board relied mainly upon Petitioner's underlying commitment offense, the issue for this Court is whether the state courts' rejection of petitioner's due process claim was contrary to, or an unreasonable application of, clearly-established Supreme Court authority. See 28 U.S.C. 2254(d)(1). It is true that Petitioner's crime was committed approximately nineteen years prior to the 2007 parole suitability hearing, and that Petitioner was approximately nine years beyond his minimum term at the time of the hearing. As expressed in Biggs, after passage of enough time such a factor ceases to amount to "some evidence" on its own. While it was perhaps a close question as to whether enough time had passed in this case given the cruel and calculated circumstances surrounding the murder, when the additional layer of deference in the "unreasonable application" standard is added, the question of whether the Board's decision was supported by "some evidence" is not a close call. Indeed, when the constitutionality of the underlying decision is a close question, it is almost a foregone conclusion that it was reasonable for the state courts to hold that it was not unconstitutional. Accordingly, the state courts' rejection of the this claim was not contrary to, nor an unreasonable application of, clearly-established Supreme Court authority.

Order Denying Petition for Writ of Habeas Corpus and Denying Request for Certificate of Appealability
P:\PRO-SE\SJ.JF\HC.08\Lewis03934_HCparole.wpd           9

**CERTIFICATE OF APPEALABILITY**

The federal rules governing habeas cases brought by state prisoners have recently been amended to require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling.  See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).  However, the Ninth Circuit has made clear that a state prisoner challenging the Board of Prison Terms' administrative decision to deny a request for parole need not obtain a certificate of appealability.  See Rosas, 428 F.3d at 1232.  Accordingly, any request for a COA is DENIED as unnecessary.  The clerk shall forward to the court of appeals the case file with this order.  See Fed. R. App. P. 22(b).

**CONCLUSION**

For the reasons set forth above, the Court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state criminal proceedings.  Accordingly, the petition for writ of habeas corpus and COA are DENIED.

The Clerk shall terminate all pending motions, enter judgment and close the file.

IT IS SO ORDERED.

Dated: 3/17/10

JEREMY FOGEL
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAMUEL W. LEWIS,

        Petitioner,

v.

BEN CURRY, Warden,

        Respondent.

Case Number: CV08-03934 JF

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on  3/18/10 , I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Samuel W. Lewis E05524
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960-0689

Dated:  3/18/10

                                      Richard W. Wieking, Clerk
                                      By: Diana Munz, Deputy Clerk

Samuel W. Lewis E05524
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960-0689

CV08-03934 JF